CHARLES D. SWIFT (D.C. ID No. 987353) (*admitted 12/07/2015*)
cswift@prolegaldefense.com

Swift & McDonald, P.S.
833 E. Arapaho Rd., Ste. 102
Richardson, TX 75081
Tel: (972) 914-2507; Fax: (972) 692-7454

*Attorney for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| BRANDON TURNER, an individual whose address is 1875 N.E. 172nd St., Shoreline, WA  98155 | Case No.: 1:18-cv-267 |
| Plaintiff, | CIVIL ACTION |
| vs. | |
| RICHARD V. SPENCER, Secretary of the Navy, in his official capacity; whose address is "Office of the Secretary of the Navy, 1000 Navy Pentagon, Room 4D652 Washington, DC 20350", | PLAINTIFF'S ORIGINAL COMPLAINT AND REQUEST FOR RELIEF |
| VADM WALTER E. CARTER, USN Superintendent, U. S. Naval Academy, in his official capacity; whose address is "121 Blake Rd, Annapolis, MD 21402", | |
| and, | |
| CAPT ROBERT B. CHADWICK, USN Commandant of Midshipmen, U.S. Naval Academy, in his official capacity whose address is "121 Blake Rd, Annapolis, MD 21402". | |
| Defendant(s) | |

## JURISDICTION AND VENUE

1. The court has jurisdiction pursuant to the Administrative Procedures Act 5 U.S.C. §§ 701-

706. Plaintiff's claims arise from the violation military regulations of the U.S. Naval Academy pertaining to separation for misconduct established pursuant to federal statue.

2.   The United States District Court for the District of Columbia is an appropriate venue under 28 U.S.C. § 1391(e) and 5 U.S.C. § 703.

## PARTIES

3.   Plaintiff, Brandon Tuner,[1] was formerly a Midshipman First Class at the United States Naval Academy. MIDN Turner was separated from the U.S. Naval Academy for alleged misconduct on May 17, 2013. At the time of separation, MIDN Turner had completed all academic and professional requirements for graduation.  As result of the separation, MIDN Turner suffered harm in the form of denial of commission as an Ensign in the United States Navy, denial of a Bachelors in Science in Economic, and a demand for reimbursement to the United States the cost his education in the amount of  $180,728.82.

4.   Defendant, the Honorable Richard V. Spencer, is the Secretary of the Navy and is sued in his official capacity. Secretary Spencer is the successor in interest to the Honorable Ray Mabus, who served as Secretary of the Navy during all relevant periods of the complained action.

5.   Defendant, Vice Admiral Walter E. Carter, is the Superintendent of the U.S. Naval Academy, and is sued in his official capacity.  Vice Admiral Carter is the successor in interest to Vice Admiral Michael H. Miller, USN, who served as Superintendent of the U.S. Naval Academy during all relevant periods of the complained action.

6.   Defendant, Captain Robert B. Chadwick, is the Commandant of Midshipmen for the U.S. Naval Academy and is sued in his official capacity. Captain Chadwick is the successor in interest to  Captain Robert E. Clark, USN, who served Commandant of Midshipmen for the U.S. Naval

---

[1] Plaintiff is referred by his military rank for all times while on active service at the Naval Academy, and as Mr. Turner for all periods after his separation.

Academy during all relevant periods of the complained action.

## FACTUAL ALLEGATIONS

7.   MIDN Turner entered the U.S. Naval Academy's Class of 2013 in July, 2009.[2] After four years of study, MIDN Turner was poised to graduate with a Bachelor in Science in Economics and had selected surface line as his service selection.

8.   On April 5, 2013, after bringing a prospective recruit for the football team back from dinner in downtown Annapolis, MD, MIDN Turner returned to the downtown area and apparently went to one more of the downtown bars, where he consumed an unknown quantity of alcohol, becoming severely intoxicated.

9.   At approximately 2300, MIDN Turner returned to the Naval Academy grounds. MIDN Turner initially went to his company area.  Instead of going to bed, however, he left his Company area and wandered into the 19th Company area, where he entered the room of MIDN Second Class A, a female midshipman.[3]  MIDN Turner did not have a prior relationship with MIDN A or her roommate, and his decision to enter the room is presumably attributable solely to his state of intoxication.

10. When MIDN Turner entered the room, MIDN A was seated at her desk. MIDN Turner stood and then squatted beside MIDN A's chair while attempting to engage her in conversation. MIDN Turner bragged about his participation on the Academy's football team.  During the subsequent investigation MIDN A alleged that, at some point, MIDN Turner "leaned over her" and asked "if he could kiss her."

11. MIDN A's door remained open during the time that MIDN Turner was in her room and

---

[2] In an effort to ensure that Mr. Turner succeeded, he initially attended the Naval Academy Prep School, from the summer 2008 until May of 2009.
[3] The names of the Midshipmen involved are omitted to protect their privacy.

the interaction between her and MIDN Turner was observed by two male midshipmen, Midshipman First Class B and C.  During the subsequent investigation, both stated that MIDN Turner was obviously drunk and boisterous, but did not make sexual advances toward MIDN A, nor threaten her, stating instead that the Plaintiff merely stood and then squatted by MIDN A's desk while telling her of his football accomplishments before leaving her room.

12. After leaving MIDN A's room, MIDN Turner encountered a second female Midshipman, MIDN First Class D.  While walking with MIDN D, MIDN Turner allegedly placed his arm around her shoulders and, at some point, placed his hand briefly on her buttocks. MIDN D responded to the MIDN Turners by disengaging from him.

13. Following his encounter with MIDN D, MIDN Turner went to his company area, where he went to his room to go to bed.

14. MIDN Turner's intoxication was reported to the Officer of the Day, LT C.S. Turner.[4] LT Turner went to MIDN Turner's company area, where he discovered MIDN Turner, now in his room but still visibly intoxicated.  Based on his own observations and the reports he had received, LT Turner directed a breathalyzer test be administered to MIDN Turner. On successive tests the breathalyzer indicated MIDN Turner had a Blood Alcohol (BAC) level of .20 percent and .18 percent.

15. LT Turner reported MIDN Turner's alleged misconduct to the Commandant of Midshipmen's disciplinary office and as a result a conduct investigation, in accordance with COMDTMIDNINST 1610.2, (Administrative Performance and Conduct Manual), concerning MIDN Turner, was initiated on April 7, 2013. LT Ekon George was appointed by to conduct the investigation.

---

[4] Being intoxicated over .08% of Blood Alcohol Content (BAC) is prohibited by Naval Academy Regulations.

16. On April 11, 2013, LT George interviewed MIDN Turner.  MIDN Turner reported that because of the amount of alcohol he had consumed, he had no memory of the events in question.

17. LT George also notified MIDN Turner that should he be discharged he would be obligated repay the cost of his education up to an amount of $175,000, if he chose to forgo enlisted service.

18. On April 12, MIDN D reported her encounter with MIDN Turner to her company officer. Because MIDN D alleged a potentially wrongful sexual touching, based on MIDN Turner's alleged placement of his hand over her clothes on her buttocks, the conduct investigation was mandatorily suspended in favor of an investigation by the Naval Criminal Investigative Service (NCIS).[5]

19. NCIS conducted a short investigation and, in consultation with the Naval Academy Superintendent Staff Judge Advocates Office, found that there was insufficient evidence to support a criminal charge for unlawful sexual touching in violation of Article 120.l.

20. Following the recommendation not to pursue criminal charges, midshipmen disciplinary proceedings were reinitiated.

21. At the initial disciplinary hearing before the Deputy Commandant on April 26, MIDN Turner was found to have committed misconduct: sexual contact, sexual harassment, and drunkenness, in violation of Academy Naval regulations as well as the Uniform Code of Military Justice, by the Deputy Commandant of Midshipmen. Contrary to the recommendations of MIDN Turner's chain of command, the Deputy Commandant recommended that MIDN Turner be separated from the Naval Academy.

22. Pursuant to USNA Instruction USNAINST1610.6 a conduct hearing was then set for

---

[5] SECNAVINST 5430.107 (series)

April 29, 2013, before the Commandant of Midshipmen, Captain Robert E. Clark, USN.

23. As part of the hearing, CAPT Clark considered LT George's and NCIS's investigations, the statements of Midshipman A and D, MIDN Turner's academic and performance records while at the Naval Academy, the recommendations of MIDN Turner's chain-of-command, and MIDN Turner's statement.

24. At the conclusion of the hearing CAPT Clark orally informed MIDN Turner that he had decided not to recommend separation, and instead ordered MIDN Turner to complete Alcohol and Anger Management Training, perform thirty hours of community service on behalf of a shelter for battered and abused women, and serve one month restriction aboard a ship of his designation under the supervision of the ship's commander.

25. Under COMDTMIDNINST 1610.2 the Commandant's decision not to recommend separation ended MIDN Turner's separation proceedings and permitted him to graduate and be commissioned.

26. On May 1, 2013, MIDN Turner was recalled to the Commandant's Office, where CAPT Clark informed MIDN Turner he had changed his earlier decision of retention, and was now going to forward a recommendation that MIDN Turner be separated to the Superintendent of the Naval Academy.

27. In the interim two days, MIDN Turner's chain-of-command, with the exception of his Company Officer, had also amended their recommendations to now recommend separation.

28. On May 7, 2013, the Superintendent of the Naval Academy forwarded to the Secretary of the Navy his recommendation MIDN Turner be dismissed for unsatisfactory conduct and be required to repay $180,728.82 as reimbursement for the cost of his education.

29. On May 13, 2013, MIDN Turner submitted his statement objecting to separation for the

Under Secretary's consideration. In his statement, MIDN Turner noted the irregular proceedings with regards to the Commandant's reconsideration of the initial decision that Plaintiff retained.

30. On May 17, 2013, the Under Secretary of the Navy approved Plaintiff's separation and ordered that he repay $180,728.82.

31. Pursuant to an order by the Under Secretary, MIDN Turner was separated from the Academy on or after May 17, 2013. At the time of his separation, MIDN Turner had completed all academic and military requirements required to graduate with a Bachelor of Science in Economics.

32. On April 15, 2014, the United States initiated wage garnishment against Mr. Turner, who was now a civilian, working in Seattle, Washington.

33. On April 27, 2016 Mr. Turner sought relief from repayment from the Navy Marine Corps Board of Corrections on the grounds that his disenrollment was invalid because a) the Commandant of Midshipman's reconsideration of his recommendation of separation was not authorized under the Naval Academy's regulations; b) even if authorized, the Commandant's reconsideration presents apparent unlawful command influence; and c) the obligation repay costs of the Plaintiff education was in violation of NCAA rules.

34. On April 17, 2016, the NMBCMR denied the Plaintiff's request for relief.

35. To date, the Navy has garnished Mr. Turner's wages in the amount of $13,251.93.

### STATUTORY AND REGULATORY PROVISIONS
### GOVERNING THE SEPARATION OF MIDSHIPMAN

36. The discharge of Midshipmen for unsatisfactory conduct is governed by 10 USC § 6962. Section 6962 requires the Superintendent of the Naval Academy to submit a written report of the facts to the Secretary of the Navy whenever the Superintendent determines the

conduct of a Midshipman is unsatisfactory.[6]

1

2

3

37. The procedures by which the Superintendent of the Naval Academy determinations that a Midshipman's conduct is unsatisfactory is set out in USNA Instruction USNAINST1610.6.

4

5

6

7

38. Before the Superintendent makes a conduct determination under reference 10 USC § 6962, The Commandant of the Brigade of Midshipmen shall conduct a hearing for unsatisfactory conduct consistent with the procedures outlined COMDTMIDNINST 1610.2 (Administrative Performance and Conduct Manual).[7]

8

9

10

11

39. USNAINST1610.6 creates a regulatory prerequisite that all Midshipmen separated for unsatisfactory conduct must be first recommended for separation by the Commandant of Midshipmen after a "Commandant's conduct hearing."

12

13

14

40. The Commandant shall consider the information provided during the hearing, the Midshipman's prior conduct record, and the Midshipman's overall suitability for commissioning.

15

16

17

41. At the conclusion of the hearing, the Commandant may take (a) no further action; (b) place the Midshipman on conduct probation and/or remediation; or (c) recommend separation.

18

19

42. If the Commandant recommends a Midshipman for disenrollment from USNA, the Commandant will forward the case and supporting materials to the Superintendent.[8]

20

21

22

43. Where the Superintendent elects to retain the Midshipman, COMDTMIDNINST 1610.2 authorizes the Commandant to reconsider his decision and place a Midshipman on conduct probation and/or remediation.

23

24

25

26

[6] 10 USC § 6962(a)(1).
[7] USNAINST1610.6
[8] Paragraph 3.6. Para. 5, USNAINST1610.

1

## STATUTE OF LIMITATIONS AND
## EXHAUSTION OF ADMINISTRATIVE REMEDIES

2

44. 28 U.S.C. § 2501(a) requires the filing of a claim in this Court within six years after

3

such claim first accrues.

4

45. Plaintiff's claim accrued upon the Navy Marine Corps Board for Correction of Military

5

Records' denial of his request for relief on April 17, 2016.[9]

6

46. Plaintiff's complaint is timely filed.[10]

7

47. The Navy Marine Corps Board for Correction of Military Records (NMBCMR) action

8

9

constitutes final agency action pursuant to 10 U.S.C. § 1552.

10

48. Plaintiff has exhausted all administrative remedies available to him.

11

## FIRST CAUSE OF ACTION

12

**Re-opening the Commandant's Conduct hearing after previously announcing a decision
to retain the Plaintiff violates the Military Regulations of the Naval Academy and under
the Administrative Procedures Act voids the Commandants recommendation and
nullifies the Plaintiff's obligation to repay the United States for the cost of his education.**

13

14

15

16

49. Plaintiff incorporates paragraphs 1-48.

17

50. Defendant United States was obligated to comply with its regulations concerning the

18

dismissal of a Midshipman.

19

51. The Commandant's reopening of the Conduct Hearing after announcing his decision to

20

retain the Plaintiff was in contravention of the regulation and established due process norms.

21

22

52. To the extent that the Commandant's decision to recommend separation after having

23

informed the Plaintiff that he was being retained, the consideration of such evidence is contrary

24

25

26

[9] *Lebrun v. England*, 212 F. Supp. 2d 5, 12 (D.D.C. 2002) (holding that a midshipman's claim for relief was not ripe for review until the correction board has rendered its final decision." *Id*. (citations omitted.)
[10] Plaintiff was dis-enrolled from the Naval Academy on or about May 17, 2013, accordingly even if the action were to be adjudged as commencing with his disenrollment as opposed to the final action by the board of corrections this action is within 28 U.S.C. § 2501(a) six year requirement.

to the regulatory requirement that all evidence be presented during the hearing.

53. The failure to adhere to the regulatory requirements required for separation voids the Plaintiff's obligation to repay the cost of his education.

## **SECOND CAUSE OF ACTION**

**The Commandant of Midshipman's reversal of his decision not to recommend separation of the Plaintiff without explanation or the receipt of new evidence objectively shows unlawful command influence in the form of implied bias in violation of the Fifth Amendment Due Process clause voiding the Commandants recommendation and nullifying the Plaintiffs obligation to repay the United States for the cost of his education.**

54. Plaintiff incorporates paragraphs 1-48.

55. Unlawful command influence is prohibited by Article 37(a) of the Uniform Code of Military Justice (10 U.S. Code § 837).

56. The prohibition against unlawful command influence applies to the Commandant's conduct hearing.[11]

57. The Commandant's reconsideration of his decision not to recommend separation of the Plaintiff without either receiving additional evidence or explanation creates the appearance to a reasonable citizen of unfairness resulting in a loss of confidence in the integrity of the proceedings.

58. The undue command influence prejudicially impacted the Plaintiff.

59. The Plaintiff preserved a cause of action by noting the irregularity in his subsequent statement to the Secretary of the Navy and appealing in part to NMBCR on the grounds of unlawful command influence, thereby, preserving the issue.[12]

---

[11] *See N.G. v. United States*, 94 Fed. Cl. 375, 387 (Ct. Cl. 2010) (finding that unlawful command influence applies to administrative hearings as well as military judicial proceedings); *see also Love v. Hidalgo*, 508 F. Supp. 177 (D.C. Md. 1981) (characterizing the Commandant's conduct board as an administrative proceeding)
[12] *C.f. N.G. v. United States*, 94 Fed. Cl. 375.

60. The undue command influence is properly remedied by nullifying the Plaintiff's obligation to repay the United States for his education.

**PRAYER FOR RELIEF**

WHEREFORE, the Plaintiff respectfully prays that this Court:

A. Enter judgment in his favor on all counts of this Complaint;

B. Find that the Plaintiff is not obligated to repay the costs of his education and order the repayment of all monies garnished from the Plaintiff with appropriate interest;

C. Direct that the Plaintiff be awarded a Bachelor in Science in Economics from the Naval Academy;

D. Award reasonable attorney's fees and costs; and

E. Award such other relief as this Court deems appropriate.


Dated: February 5, 2018.

s/ *Charles D. Swift*
Charles D. Swift
D.C. ID No. 987353
Attorney for the Plaintiff
Swift & McDonald, P.S.
833 E. Arapaho Rd, Ste. 102
Richardson, TX  75081
Phone: 972-914-2507
Fax: 972-692-7454
cswift@prolegaldefense.com