# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **BRANDON TURNER**, <br><br> Plaintiff, <br><br> v. <br><br> **RICHARD V. SPENCER, in his official capacity as United States Secretary of the Navy** *et al.*, <br><br> Defendants. | Case No. 1:18-cv-00267 (TNM) |

## MEMORANDUM OPINION

One spring night weeks before his expected graduation, Midshipman Brandon Turner returned intoxicated to his U.S. Naval Academy dormitory from a night on the town. J.A. 41. Instead of sleeping it off, he entered a female classmate's room without her permission, "cornered her in a position where she felt trapped," and asked for a kiss. J.A. 50. She refused, so he "called her a derogatory, gender-specific name" and left. J.A. 41. He then confronted another female classmate in the hallway. Without her consent, he put his arm around her, "began to stroke her hair," and touched her inappropriately. *Id*. The classmate managed to break free and escape to her room, locking the door behind her. *Id*. After classmates reported his behavior, Mr. Turner was ordered to the dormitory's main office. *Id*. There, he took a breathalyzer test that registered a Blood Alcohol Content of 0.20%, well above the legal threshold for intoxication. *Id*.

Following an investigation and disciplinary proceedings, an Assistant Secretary of the Navy expelled Mr. Turner from the Academy. J.A. 39. He was also discharged from the Navy and ordered to repay roughly $180,000 in educational benefits. *Id*. Mr. Turner appealed this

decision to the Board for Corrections of Naval Records (the "Board"), which upheld the Assistant Secretary's order. J.A. 237. He now brings this challenge, alleging that the Navy violated the Administrative Procedure Act (APA), his constitutional right to due process, and the prohibition on unlawful military command influence. The Court finds that the Navy complied with its regulations and applicable laws and that Mr. Turner received a fair process. It will thus grant summary judgment for the Defendants.

## I.

Mr. Turner was a student, or "midshipman," in the Naval Academy's Class of 2013. Midshipmen must abide by the Academy's rules of conduct set forth in the Administrative Performance and Conduct System Manual (the "Manual"). When a midshipman engages in unsatisfactory behavior, the Manual authorizes the Commandant of Midshipmen—the Academy's second-in-command—to investigate, review the student's record, and hold a hearing. J.A. 201. Based on his findings, the Commandant may (1) elect to take no disciplinary action, (2) place the midshipman on conduct probation or remediation, or (3) recommend the midshipman for separation from the Academy. *Id*. While the Commandant may impose lesser punishments at his "sole discretion," only the Academy's Superintendent "may authorize late graduation." *Id*.; J.A. 215.

If the Commandant believes a midshipman's conduct merits disenrollment, he must submit a memorandum articulating the reasons for this recommendation to the Superintendent. J.A. 201. The Superintendent may then conduct his own hearing or review of the record. J.A. 202. If he agrees, the Superintendent must inform the midshipman of this decision in writing. *Id*. The student may then submit a statement to the Secretary of the Navy "showing cause why he/she should be retained at the Naval Academy." *Id*. The Superintendent is also required to

submit to Navy leadership a "full report of the facts." 10 U.S.C. § 6962. If the Secretary of the Navy believes that the Superintendent's recommendation is "reasonable and well founded," he may discharge the midshipman from the Academy and naval service. *Id*.

Here, the Commandant launched an investigation shortly after learning of Mr. Turner's misconduct. Compl. 4. The investigating officer found that the midshipman's intoxication "was of a nature to bring discredit upon the naval service," that he engaged in "risky drinking," and that his "acts amounted to sexual harassment" in violation of the Academy's rules. J.A. 53-54. Based on these findings, the Deputy Commandant forwarded the case to the Commandant with a recommendation that Mr. Turner be separated from the Academy. J.A. 29.

The Commandant then held a hearing. He reviewed Mr. Turner's record, finding that the midshipman had amassed numerous prior infractions including two "major offenses," and that his overall class standing was 1078 out of 1080 students. J.A. 50. The Commandant noted that, like the Deputy, Mr. Turner's Platoon and Battalion Commanders had first "recommended separation based on the egregious nature of the offense." J.A. 37. But they changed their minds "after listening to the support of the character witnesses and [the] plan for evaluation over the summer." *Id*.

After this hearing concluded, the Commandant "orally informed" Mr. Turner that "he had decided not to recommend separation." Compl. 6. Instead, the Commandant would recommend "a delayed graduation pending sucessful [sic] completion of dignity and respect remediation, anger management, 30 hours of community service w/a battered women [sic] shelter, and 1 month at sea on a frigate/destroyer/cruiser with a recommendation from the commanding officer." J.A. 28. But two days later, the Commandant "called [Mr. Turner] and his chain of

command into his office and told [them] that he was changing his recommendation to the Superintendent and will now be forwarding [Mr. Turner] for separation." *Id*.

The Superintendent then conducted a "personal interview with Midshipman Turner." J.A. 41. He too "determined [Mr. Turner's] conduct to be unsatisfactory," and so "recommend[ed] Midshipman Turner be discharged from the Naval Academy." *Id*. On behalf of the Secretary of the Navy, the Assistant Secretary agreed and ordered Mr. Turner's separation and required him to reimburse the Navy for the full cost of his Academy education, noting that he had "carefully reviewed the matters" and had made his decision based on the Superintendent's recommendation. J.A. 39.

Mr. Turner appealed this order to the Board. He argued that Navy regulations did not permit the Commandant to reconsider his initial recommendation. Compl. 7. Even if this reconsideration were permissible, he added, the Commandant's final decision must have been unlawfully influenced by the Superintendent in violation Article 37(a) of the Uniform Code of Military Justice. Compl. 10. The Board rejected these claims. It found that Mr. Turner was disenrolled "in compliance with all applicable regulations and statutes" and "did not find evidence of unlawful command influence." J.A. 237. It also "substantially concurred" with the conclusions of an advisory opinion prepared by a Staff Judge Advocate. *Id*.

Mr. Turner relies on similar arguments here. First, he contends that the Commandant's initial recommendation was a "final decision" that "ended consideration of the Plaintiff's separation for conduct reasons." Pl.'s Mem. in Supp. of Mot. for Summ. J. 10, ECF No. 14-1 ("Pl.'s Mem."). When the Commandant changed his mind, he "re-open[ed] the hearing without prior notice" to Mr. Turner. *Id*. at 13. Neither the Manual nor the "applicable standards of due process," he claims, allowed the Commandant to do so. *Id*.

4

Second, even if the Navy's regulations allowed the Commandant to reconsider, the "apparent influence of the Superintendent on the Commandant's decision regarding separation . . . constituted unlawful command influence." Pl.'s Resp. to Defs.' Cross-Mot. for Summ. J. 5, ECF No. 17 ("Pl.'s Response"). Mr. Turner alleges that a "reasonable person could . . . believe under the circumstances that the Superintendent" disagreed with the Commandant and improperly "directed [him] to change his recommendation" to disenrollment. *Id*. at 6.

The Defendants—Secretary Richard Spencer, Superintendent Walter Carter, and Commandant Robert Chadwick—maintain that the Naval Academy staff complied with applicable law. Defs.'s Mem. in Supp. of Cross-Mot. for Summ. J. 2, ECF. No. 16 ("Defs.' Mem."). They also contend Mr. Turner "failed to introduce any evidence demonstrating that the Commandant's ultimate recommendation of disenrollment was the product of unlawful command influence." *Id*. Both parties moved for summary judgment.

## II.

A court must "hold unlawful and set aside" any executive agency action that it determines is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). The scope of this review is "narrow and a court is not to substitute its judgment for that of the agency." *Motor Vehicle Mfrs. Ass'n v. State Farm Mutual Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). The arbitrary and capricious review standard is a "[h]ighly deferential" one that "presumes the validity of agency action." *Hagelin v. Fed. Election Comm'n*, 411 F.3d. 237, 242 (D.C. Cir. 2005).

Decisions of a military corrections board are reviewed under an "unusually deferential application" of this standard. *Kries v. Sec'y of the Air Force*, 866 F.2d 1508, 1514 (D.C. Cir. 1989). So a party "seeking review of a board decision bears the burden of overcoming 'the

5

strong, but rebuttable, presumption that administrators of the military, like other public officers, discharge their duties correctly, lawfully, and in good faith." *Roberts v. Harvey*, 441 F. Supp. 2d 111, 118 (D.D.C. 2006) (quoting *Frizelle v. Slater*, 111 F.3d 172, 177 (D.C. Cir. 1997)). Typically, only the "'most egregious' Board decisions will fail to satisfy" the standard. *Id*. at 119 (quoting *Kreis*, 866 F.2d at 1515). Summary judgment "serves as the mechanism for deciding, as a matter of law, whether the agency action is supported by the administrative record and otherwise consistent with the APA standard of review." *Alston v. Lew*, 950 F. Supp. 2d 140, 143 (D.D.C. 2013).

### III.

The decision to disenroll Mr. Turner from the Naval Academy did not violate Navy regulations or his due process rights. And Mr. Turner offers mere speculation in seeking to characterize the Commandant's recommendation as a product of unlawful command influence. Because of these findings and applying the double dose of deference accorded to the Board's decisions, the Court must grant the Defendants summary judgment.

### A.

Mr. Turner believes that the "unambiguous language" of the Manual "did not permit the Commandant to reconsider his initial decision not to recommend the Plaintiff's separation." Pl.'s Mem. at 9, 12. He cites in support of this view Section 3.5(a)(4) of the Manual, which states that:

> The Commandant shall consider the information provided during the hearing, the Midshipman's prior conduct record, and the Midshipman's overall suitability for commissioning. The Commandant may, at his/her sole discretion, *take one of the following courses of action at the conclusion of the hearing*:

> (a) No Further Action. Appropriate documentation is included in the
>     Midshipman's performance record.
> (b) Placement of Midshipman on conduct probation and/or remediation.
> (c) Recommendation for separation.

J.A. 201 (emphasis added). When the Commandant stated his intent to recommend remediation, Mr. Turner contends, he took a "course of action that concluded the hearing." Pl.'s Mem. at 12. And because "[t]here can be no other meaning for 'take one' other than to eliminate the other courses of action from further consideration," the Commandant's initial decision precluded his ultimate recommendation of separation. Id. at 12-13.

The Defendants disagree. They assert that "[t]his allegation overstates the finality of the Commandant's initial indication of his intention to recommend retention." Defs.' Mem. at 8. The regulations do not preclude reconsideration, they suggest, and the "administrative record contains no indication that a formal recommendation of retention was ever issued." Id. at 9. The advisory opinion commissioned by the Board similarly stated that the "fault in [Mr. Turner's] logic is the premise that the Commandant 'reversed an earlier decision' or 'initially recommended separation.' He did neither." J.A. 242.

The Manual's plain language supports the Defendants' position. As an initial matter, whatever merit Mr. Turner's process argument may hold for remedial discipline in general, it is manifestly incorrect in his case. Section 4.4 of the Manual notes that "[o]nly the Superintendent may authorize late graduation." J.A. 215. After the Commandant held a hearing, he stated his intent to recommend "delayed graduation" until Mr. Turner completed several punishments, including a month aboard a Navy vessel. J.A. 30. This course of action thus required the review and approval of the Superintendent. So whether the Commandant recommended delayed graduation and the Superintendent found this discipline to be unduly lenient, or the Commandant reached this same conclusion prior to making his recommendation, it is clear that the

7

Commandant could not solely decide to delay graduation. In short, the initial hearing could not have conclusively resolved Mr. Turner's fate.

More broadly, Mr. Turner's suggestion that an oral decision at the hearing's conclusion is final ignores other parts of the Manual. Section 3.5(a)(3), for instance, states that the Commandant "may assign conduct probation and/or remediation *in a written letter delineating the terms of successful completion*." J.A. 201 (emphasis added). He may either "personally deliver" this letter or have it "separately served on the Midshipman." *Id*. The record features no evidence of Mr. Turner being delivered or served a letter outlining remediation or probation requirements. In fact, Mr. Turner concedes that he was "orally informed" of the Commandant's initial intentions. Pl.'s Mem. at 4. Again, this suggests that the Commandant's statement at the hearing was a preliminary perspective, not a final decision.

In any event, Section 1.3 of the Manual explains that "[t]he procedures established in this instruction are discretionary to some extent," and are "designed in part to assist the Superintendent" in gathering information about a midshipman's unsatisfactory conduct. J.A. 181. The Superintendent may recommend a midshipman's separation to the Secretary "without implementing any of the procedures contained in this instruction." *Id*.

So even if, as Mr. Turner suggests, the Commandant's final recommendation was "void," the decision to separate him from the Naval Academy was made in accordance with the Navy's regulations and federal law. *See* Pl.'s Mem. at 9. To discharge a midshipman from the Academy, the Superintendent must simply submit "to the Secretary of the Navy in writing a full report of the facts." 10 U.S.C. § 6962. He did so. *See* J.A. 41 ("Memorandum Report for the Secretary of the Navy"). In that report, the Superintendent recited the facts of Mr. Turner's case and noted that he personally conducted an interview with the midshipman. *Id*. It was based on

8

this report, as required by the Manual and 10 U.S.C. §6962, that the Secretary's designee ordered Mr. Turner's disenrollment from the Academy. J.A. 39. In sum, there is sufficient evidence to uphold the Board's finding that Mr. Turner was "separated from the U.S. Navy in compliance with all applicable regulations and statutes." J.A. 237.

## B.

Mr. Turner also contends that the Commandant deprived him of his due process rights. Pl.'s Mem. at 16. He asserts that there is "no evidence in the administrative record" that he "received any prior notice" of the Commandant's changed intent. *Id*. This is true. But a lack of notice did not preclude Mr. Turner from "provid[ing] a meaningful response" to the Commandant's final decision. *Id*.

As Mr. Turner concedes, due process is "flexible and calls for such procedural protections as the particular situation demands." *Id*. (quoting *Lebrun v. England*, 212 F. Supp. 2d 5, 16 (D.D.C. 2002)). When a midshipman is facing involuntary dismissal from the Academy, he must "have a hearing, be apprised of the specific charges against him, and be given an adequate opportunity to present his defense both from the point of view of time and the use of witnesses and other evidence." *Lebrun*, 212 F. Supp. 2d at 16 (citation omitted).

Here, after Mr. Turner learned that the Commandant planned to recommend his separation from the Academy, he had three opportunities to respond and assert new defenses. First, he was interviewed by the Superintendent, who reviewed his case and the Commandant's recommendation. J.A. 41. Mr. Turner does not allege that the Superintendent failed to provide him with an opportunity to voice his concerns about the Commandant's hearing.

Second, Mr. Turner submitted a Show Cause Statement to the Secretary of the Navy, as was his right under Section 3.6 of the Manual. J.A. 202. In that Statement, Mr. Turner noted

9

that the Commandant "had changed his recommendation from retention to separation," and that his case was then "adjudicated by the Superintendent of the Naval Academy." J.A. 277. He specifically "request[ed] review of the evidence and procedures leading up to the recommendation for separation." *Id*. The Assistant Secretary explained that, in ordering separation, he "carefully reviewed the matters Midshipman Turner submitted" in this Statement. J.A. 39. The record contains no evidence that the Assistant Secretary failed to weigh the Commandant's initial recommendation of retention.

And third, Mr. Turner appealed his separation to the Board. In fact, in the appeal he "theorized that the Commandant reconsidered the decision based on the alleged victim's reported displeasure with the decision to retain him." Pl.'s Mem. at 17. To evaluate Mr. Turner's claims, the Board requested "written comments and recommendations" from a Staff Judge Advocate. J.A. 241. The Staff Judge Advocate considered the sufficiency of the process Mr. Turner received and concluded that the Academy's administrative procedure was adequate. J.A. 242. The Board reviewed these findings, Mr. Turner's "allegations of error and injustice," and "all material submitted in support thereof." J.A. 237. It denied his appeal. There is simply no evidence that Mr. Turner was prejudiced by the way the Commandant announced his decision to modify his initial recommendation.

Mr. Turner raises another due process argument. He contends that the Commandant's "failure to articulate the reasons for revising" his initial recommendation, when considered with "similar revisions by the Plaintiff's chain-of-command constitutes apparent unlawful command influence." Pl.'s Mem. at 17. Unlawful command influence is a "serious matter" that "poses a special threat to military due process of law by introducing into judicial proceedings powerful external factors which can skew results." *United States v. Cruz*, 20 M.J. 873, 879 (A.C.M.R.

10

1985).

There are two types of unlawful command influence: actual and apparent. *United States v. Boyce*, 76 M.J. 242, 248 (C.A.A.F. 2017). The "appearance of unlawful command influence will exist where an objective, disinterested observer, fully informed of all the facts and circumstances, would harbor a significant doubt about the fairness of the proceeding." *United States v. Lewis*, 63 M.J. 405, 415 (C.A.A.F. 2006). Mr. Turner urges the Court to conclude that the "apparent influence of the Superintendent on the Commandant's decision regarding separation . . . constituted unlawful command influence." Pl.'s Response at 5. The Court cannot do so.

To begin with, the record contains no evidence suggesting that the Superintendent directed the Commandant or any other officers to change their findings or recommendations. In fact, these officers appeared to have wrestled with the appropriate level of punishment to impose on Mr. Turner. The Platoon and Battalion Commanders, for example, first "recommended separation" because of the serious nature of his offense. J.A. 37. They changed their minds after hearing the support offered by Mr. Turner's character witnesses and the "plan for evaluation over the summer." *Id*. It is not unreasonable to conclude that the officers changed their minds again upon further reflection, particularly given the seriousness of the allegations against Mr. Turner, his lengthy history of misconduct, and his lackluster academic performance at the Academy.

Still more, the investigating officer, Deputy Commandant, and Commandant all found that Mr. Turner's conduct violated the Academy's rules. *See* J.A. at 29-30, 50, 53-54. Mr. Turner does not allege that these findings were improperly influenced by the Superintendent. And, as discussed above, neither the Commandant nor any of the other officers in Mr. Turner's chain of command had the final authority to order separation. Instead, that power is vested in the

Secretary of the Navy, who relies on the recommendation of the Superintendent. So it is unsurprising that the Board "did not find evidence of unlawful command influence." J.A. 237. The record does not permit the Court to find that a disinterested observer would have substantial doubts about the fairness of the proceedings. J.A. 237.

In short, Mr. Turner received a fair and thorough review process conducted in accordance with the Navy's regulations and applicable law. He had ample opportunity to present his defenses, to attack the Commandant's recommendations, and to offer any other arguments or responses he desired. Thus, applying the high degree of deference due to military corrections boards, the Court affirms the denial of Mr. Turner's appeal.

## IV.

For these reasons, the Defendants' Cross-Motion for Summary Judgment will be granted, and the Plaintiff's Motion for Summary Judgment will be denied. A separate order will issue.

Dated: November 5, 2018

TREVOR N. MCFADDEN
United States District Judge